## MANAWAY *vs.* THE STATE.

[INDICTMENT FOR FORGERY.]

1. *Agent; what competent witness to prove.*—The agent of a company to whom application has been made for payment of a forged demand against the company, is a competent witness to prove his agency, in a prosecution for forgery against the person who attempted to collect the money.

2. *Forged instrument; must be produced or accounted for.*—The instrument alleged to be forged must be produced at the trial, or its absence satisfactorily accounted for.

3. *Evidence; what admissible as part of res gestæ.*—Genuine papers of the same kind as the one alleged to be forged, which were presented with it, and taken from the accused at the same time, are part of the *res gestæ*, and admissible as evidence.

4. *Mobile Charitable Association, certificate of; what necessary to sustain conviction for forgery of.*—To sustain a charge of forging a certificate of subscription purporting to be made by the Mobile Charitable Association, the first payment of the money required as a condition precedent to the right of the company to set up a lottery, must be shown. But it is not necessary to show that subsequent payments required have been made.

APPEAL from Circuit Court of Dallas.
Tried before Hon. M. J. SAFFOLD.

The appellant, Manaway, was indicted under § 3702 of

the Revised Code for falsely and fraudulently forging a certificate for the payment of money, purporting to be one made by a partnership association, composed of J. C. Moses, F. H. Fowler and E. Bebee, authorized by an act of the legislature, approved December 31st, 1868, with the intent to defraud, &c. The defendant went to trial on the indictment, on plea of "not guilty;" was found guilty and sentenced to two years imprisonment in the penitentiary.

On the trial, as shown by the bill of exceptions, the State introduced J. B. Stone, who testified, in substance, that he was the agent of the association, and authorized by it to issue such certificates of subscription as the alleged forged one purported to be ; that in the county of Dallas, and State of Alabama, on the 24th March, 1870, the defendant came to the office, threw down four tickets on the table and said : "Mr. Stone, I've got you! Pay me my money." Three of the four tickets thus thrown on the table were in Stone's handwriting ; the fourth ticket was a forgery. The ticket, if genuine, would be worth $37.50. Witness had seen defendant write, but could not swear that the writing on the ticket alleged to be forged was in the handwriting of defendant. Witness, after looking carefully at the forged ticket, told defendant that the ticket was a forgery, when defendant again responded : "Mr. Stone, I've got you! Pay me my money." Witness then had defendant arrested.

The defendant "objected to the evidence of the witness going to the jury, unless he could swear that the handwriting on the forged ticket was the handwriting of the defendant," and, also, unless he could establish by other evidence than his own, authority to write the ticket which he swore he wrote." This objection was overruled, and defendant excepted. Boyd, another witness for the State, testified to the same facts as Stone ; the same objection was made to his testimony, on the same grounds ; this was overruled, and defendant excepted.

Jack Massey, another witness for the State, testified that on the night of the drawing, while Stone was at the wheel, he saw defendant in the office, and saw him take a paper about the shape and size of the printed lottery ticket and

put in under the stamp usually used by the agent, and push the stamp down on it. He was not near enough to see whether there was any thing on the paper or not. The State then introduced the lottery certificate alleged to be forged, together with the other tickets which the witness, Stone, swore he wrote. The defendant objected to the introduction of the tickets, and the alleged forged ticket. The court overruled the objection, allowed the tickets to go to the jury, and defendant excepted.

The State then introduced " the charter of the Mobile Charitable Association," which may be found in the acts of 1868, p. 511. This charter confers certain powers and privileges on the parties therein named, and their associates as partners, and gives them " authority to form themselves into a partnership association," for the purposes of carrying out the objects of the act. The second section of said charter is as follows :

" Section 2. *Be it further enacted*, That before commencing business under the provisions of this act, said parties shall pay, or cause to be paid to the board of school commissioners of Mobile county, for the use of the public schools of said county, the sum of one thousand dollars, and annually thereafter a like amount, for the term of ten years, or so long as said partnership shall choose to do business under the provisions of this act ; it being understood and agreed, that said payment of one thousand dollars per annum by said partnership to said common school fund, is the consideration upon which this privilege is granted ; and whenever said company shall fail to pay said sum, according to the provisions of this act, then, and in that case, their right to do business shall cease."

The defendant objected to the introduction of the charter ; but his objection was overruled, and it was allowed to be offered as evidence, and defendant excepted. The defendant further objected to the introduction of the charter, as sufficient evidence of the legal organization of the company, unless the State should show that the first $1,000 had been paid, and said company had not failed to pay said sum, per annum, up to date. This objection was overruled, and defendant excepted.

25

This was all the evidence for the State, except some testimony " sustaining Jack Massey's character for truth and veracity."

The defendant then offered to prove, in substance, by two witnesses, that on the night of the arrest they were going to the office to see if they had drawn a prize ; that on their way they met witness, Jack Massey, and they asked him " if he knew that Manaway had been arrested," and he answered " No !  What for ? "   And on being told that it was for forging a lottery ticket, he replied that "they had better go and see about him," and on arriving at the lottery office asked to see the forged ticket, and then remarked that " he had known Manaway some time, and that he could not believe that he did it."   The declaration at the lottery office the court excluded, because the proper predicate had not been laid for its introduction, and defendant excepted.

The defendant also introduced two witnesses, who swore that " they had knowledge of the witness, Massey, and the character which he bore in the neighborhood in which he lived for truth and veracity, and that from their knowledge of his character they would not believe him on oath." This was all the evidence.

The defendant requested the following charges :

1st. That the State must show the legal organization of the association before doing business, to show their certificates and tickets to be of any value.

2d. That unless the association first paid the $1,000 required by its charter, before doing business, its certificates and tickets are of no value.

3d. That the certificate before the jury is of no weight in the law, unless in connection with Massey's evidence, and if they do not believe his evidence the certificate is of no importance.

These charges were refused, and the defendant excepted to the refusals severally.

W. H. F. RANDALL & G. W. GAYLE, for appellant.
JOSHUA MORSE, Attorney-General, contra.

B. F. SAFFOLD, J.—The motion to exclude the testimony of the witness, Stone, was properly overruled. The witness was competent to prove his authority to issue the certificates.—Phil. Ev., vol. 1, § 416, 2 vol. § 63. His want of knowledge of the defendant's handwriting was no objection to the admissibility of his evidence.

The instrument alleged to be forged was obliged to be introduced at the trial, or its absence satisfactorily accounted for.—Bishop's Crim. Pro., 2 vol., § 387 ; *Butler v. The State*, 30 Ala. 43. The genuine tickets taken from the prisoner at same time were a part of the *res gestæ*, and constituted a link in the chain of evidence. No reason is alleged why they should have been excluded.—*Mason & Franklin v. The State*, 42 Ala. 532 ; *Givens v. The State*, 5 Ala. 747.

The act of the legislature authorizing the association to make and sell certificates of subscription was competent evidence. The testimony tending to impeach the witness, Massey, was inadmissible for want of the proper predicate. *Bradford v. Barclay and Wife*, 39 Ala. 33.

The only error in the record is the failure, on the part of the State, to prove that the company had paid the $1,000 required as a condition precedent to their right to set up a lottery.—Acts, 1868, p. 511. Without the performance of this condition the certificates were illegal, and not the subject of forgery. —Rev. Code, 3616.

The objection does not apply to the subsequent payments required.

The judgment is reversed and the cause remanded. The prisoner will remain in custody until discharged by law.